**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:16-cv-03137-PAB-KLM

RICKIE FAULKNER, Individually and On
Behalf of All Others Similarly Situated,

Plaintiff(s), v.

Ensign United States Drilling, Inc.

Defendant.

---

## STIPULATED MOTION TO APPROVE SETTLEMENT

---

COME NOW the parties, by and through their undersigned counsel, and move this Court for an Order approving their proposed settlement as fair and reasonable. *See* 29 U.S.C. §216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). Pursuant to *Lynn's Food,* the Court should review a proposed settlement to determine if it is "a fair and reasonable resolution of a *bona fide* dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. The Court should also be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton v. Frito-Lay, Inc.,* 2007 U.S. Dist. LEXIS 10287 at *2-3, (M.D. Fla. Jan. 8, 2007). For the reasons set forth more fully below, and because it is in the interest of justice, an order approving the parties' settlement and dismissing this case with prejudice should issue.

48753423.1

## I.     DISCUSSION

Plaintiff Rickie Faulkner brought this action seeking unpaid overtime compensation on behalf of himself and similarly situated individuals pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §201, *et seq.* As detailed in the Complaint, Plaintiff alleged that he was employed by Defendant as a rig manager and that he and other rig managers were entitled to receive overtime compensation for any time they worked more than 40 hours in a workweek. Defendant filed an Answer and raised a number of affirmative defenses, including that rig managers were exempt from the overtime requirement under the FLSA, that Ensign acted in good faith, and that Plaintiff could not prove that Defendant acted in bad faith. It is undisputed that Defendant paid rig managers a fixed salary and an additional "day rate" for every hour worked. Although rig managers often worked more than forty hours per week, they were not paid overtime compensation, as Ensign considered them exempt employees under the FLSA.

### A.     Propriety of Final Class Certification.

Because settlement was reached in this matter prior to a final determination regarding whether class certification is appropriate, "the Court must make some final class certification finding" prior to approving the Parties' settlement. *Whittington v. Taco Bell of Am., Inc.,* No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, *2 (D. Colo. Nov. 13, 2013) (*citing Peterson v. Mortgage Sources, Corp.,* 2011 WL 3793963, *4 (D. Kan. Aug. 25, 2011)). In making this determination, the Court generally considers three factors to assess whether plaintiff and the putative class members are "similarly situated," as required to proceed as a collective action under the FLSA: "(1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness

and procedural considerations." *Thiessen v. GE Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir.

2001).

> On February 9, 2018, the Court conditionally certified a class consisting of:
>
> All current and former rig managers of Ensign United States Drilling Inc. classified as exempt from overtime under the Fair Labor Standards Act ("FLSA") for at least one week during the two-year period prior to the date the Court authorizes notice to the present.

[Doc. 52].  Although at that time the Court applied the more lenient standard for certification

applicable at the pleadings stage, final certification is also appropriate with regard to this class.

While each rig manager is responsible for a different rig, the job responsibilities of all rig managers

are the same, as reflected by a common job description applicable to all rig managers.  (Ex. A.)

*See also, e.g.,* Doc. 53-2 and Doc. 53-3 (containing declarations filed by Plaintiff Faulkner and

opt-in Heim identifying the similarities between their job duties).  All rig managers receive the

same training and are then responsible for the safe and efficient operations of their assigned rig.

This similarity means that the defenses raised by Ensign in this litigation – primarily that rig

managers are exempt employees under the FLSA – apply equally to all rig managers.  Also,

because of these similarities, proceeding as a collective action serves the goals of fairness and

procedural efficiency.  Otherwise, each rig manager would have to proceed separately in order to

receive an answer to the same legal question, giving rise to a significant risk of inconsistent rulings

and wasting judicial resources.  Thus, final class certification is appropriate.[1]

---

[1] In their oppositions to the Motion for Summary Judgment presently pending before the Court, Plaintiffs attempt to distinguish various Plaintiffs' job duties and responsibilities in an effort to avoid summary judgment.  However, it is undisputed that Defendant considers all of its rig managers to be exempt employees under three separate exemptions found in the FLSA, and the parties stipulated to conditional class certification in this case.

B.     Settlement of the Overtime Claims

From the outset, the parties have made an effort to reduce the burdens and expense of litigation.  They stipulated to the conditional certification of the class and submitted an agreed-upon Notice for the Court's approval.  The court-approved Notice [Doc. 46-1] was sent to all similarly situated individuals using Defendant's list of rig managers employed during the applicable two-year period.[2]  The list contained a total of 37 potential opt-in plaintiffs.  Of those, three rig managers opted in, bringing the total number of claims to four.

Each of the parties is represented by counsel experienced in the litigation of FLSA claims. In agreeing upon a settlement, the parties obtained sufficient information to allow them to make informed decisions after having had the opportunity to analyze their respective claims and defenses.  The parties exchanged Rule 26 Initial Disclosures and Defendant supplemented its disclosures on September 11, 2017; the deposition of Plaintiff Faulkner was held on December 14, 2017; and the parties exchanged written discovery.  The subjects addressed through this discovery covered a wide range of issues, including those issues still disputed by the parties
Upon review of the discovery, disclosures, pleadings, and information provided by the parties, the parties worked to identify and narrow down the issues in dispute.  First, Defendant maintains that its rig managers were "exempt" and, thus, not entitled to overtime.  Specifically, Defendant believes that there are three separate exemptions which apply to rig managers – the highly compensated employee exemption, the executive exemption, and the administrative exemption. Defendant asserts that these employees were all guaranteed a base salary above the statutory

---

[2] The notice was sent to those employed as rig managers during a two-year period, instead of a three-period, by agreement between the parties.  [Doc. 46].

48753423.1

minimum and were compensated well over $100,000 per year for their work.  Each rig manager

was tasked with managing a rig specifically assigned to him, regularly directing ten to twelve

Ensign employees, with the authority to hire or fire those employees.  Rig managers were required

to exercise discretion and independent judgment on a daily basis with respect to matters of

significance, including the safety of every individual on the rig and the multi-million dollar

operations of the rig itself.  This work was directly related to the management of Ensign's business

operations and the business operations of Ensign's customers.  Thus, Ensign maintains that these

employees fall squarely within the exemptions from overtime outlined in the FLSA.  Ensign relies

on several prior court opinions for support.  *See, e.g., Furr v. Well Tech Mid-Continent, Inc.*, No.

00-1063-JTM, 2001 WL 395382 (D. Kan. Mar. 27, 2001) (explaining that "rig supervisors" or

"tool pushers" fall "within the executive exemption recognized under 29 C.F.R. § 541"); *accord*

*Wainscoat v. Reynolds Elec. & Engineering Co., Inc.,* 471 F.2d 1157, 1162 (9th Cir. 1973)

("operations superintendents" and "rig superintendents" on oil rigs were exempt employees under

the executive exemption because "the primary duties of the superintendents were managerial and

supervisory"); *Pruneda,* 2017 WL 3023214, *7 (finding a drilling company's "service

supervisors" to be exempt because they "were primarily in charge of managing and supervising

their crews on the well-sites, and their principal value to [their employer] was in so doing"); *Allen*

*v. Coil Tubing Svs., LLC,* 846 F.Supp.2d 678, 706 (S.D. Tex. 2012) (finding that an oil well service

company's service supervisors' "managerial responsibilities while in the field performing [the

employer's] projects for customers were extensive and of primary importance to [the employer]"

thus they "qualify for the executive exemption under the FLSA").

48753423.1

Second, Defendant denies that it acted in bad faith, and therefore disputes that three years of overtime is recoverable.  The determination of willfulness is an issue of fact for the jury, and it therefore cannot generally be established short of a trial, which is inherently risky.  Further, in order to establish willfulness, there is a relatively high burden of proof, as an employee must provide "substantial evidence" that the employer knew it was in violation of the Act or acted in reckless disregard as to whether it was in violation of the Act.  5 C.F.R. § 551.104 (2011); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988).

Third, Defendant claims that it acted in good faith and that it relied on prior court decisions and industry standards in setting the rig managers' daily pay and salary rates.  The FLSA contains a safe harbor for employers, whereby an employer can avoid liquidated damages if it establishes that it acted in good faith under the reasonable belief that it was in compliance with the law.  Thus, double damages are never guaranteed, and while disputed, the evidence raised a question as to whether liquidated damages would be awarded by the Court.

Plaintiffs recognize that Defendant classified them as exempt employees, but have consistently disputed that this was appropriate.  As noted in Plaintiff's briefing on Defendant's Motion for Summary judgment, Plaintiffs have believed there were fact issues in this case preventing summary judgment.  Still, Plaintiffs appreciate Defendant's arguments regarding (1) whether their classification was appropriate and (2) whether Defendant acted in bad faith. Plaintiffs are aware of the risk of loss via either summary judgment or the trial of this case.

With a number of disputed issues having been identified, the parties undertook settlement negotiations.  To facilitate this process, counsel for Plaintiffs undertook efforts to calculate the amounts of overtime possibly owed to each Plaintiff.  Taking those figures as a starting point, the

48753423.1

parties negotiated an all-inclusive resolution of their claims at $50,000.00. The Settlement Agreement is attached as Exhibit B.

Each of the Plaintiffs was given all material details about the settlement terms. The percentage of the total settlement amount ($50,000.00) allocated to each Plaintiff was calculated by taking into account time worked and compensation paid and then computing a pro rata recovery for each Plaintiff. This resulted in the following allocation of the gross settlement amount.

    a.    **Faulkner:** $8,041.59 (including a $2,500 service award);

    b.    **Heim:** $4,648.07;

    c.    **Rosendahl:** $2,535.24; and

    d.    **Castille:** $12,396.44;

The Plaintiffs have been extensively counseled regarding the proposed settlement, their respective share of the costs, attorney fees, and the amount of the net recovery and form of payment. Each Plaintiff was asked to approve the proposed settlement in writing. None of the Plaintiffs have objected to or rejected the proposal.

If this case were to proceed to trial, the risk to Plaintiffs would be substantial, and there is no guarantee that they would recover at all, much less an amount consistent with their initial calculation, which included three years of overtime and liquidated damages. Indeed, Defendant could prevail and prove that Plaintiffs were exempt, in which case Plaintiffs would recover nothing.

    C.    <u>Attorney's Fees and Expenses</u>

Plaintiffs employed the law firm of Kennedy Hodges, LLP to prosecute claims on their behalf. Counsel engaged in discovery, achieved conditional certification, conducted extensive

48753423.1

research and writing, communicated with claimants, prepared for deposition, attended same, filed and responded to motions and negotiated the settlement. While the lodestar in this case for Plaintiff's counsel is more than $75,000, Plaintiff's counsel is only seeking 33% of the gross settlement ($16,666.65) plus expenses of $5,712.

## II.      CONCLUSION

This case involves several *bona fide* disputes and the proposal is a fair and equitable resolution to all parties. The proposed recovery to each Plaintiff provides additional compensation for every day they worked during the Class Period. The Court should also approve the full attorney's fees sought, as the amount is fair and reasonable and does not unduly diminish the recovery to the individual employees. The proposed settlement should therefore be approved by this Court. *See Baker v. Vail Resorts Mgmt. Co.*, No. 13-CV-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014) (unpublished) (*citing Lynn's Food Stores*, 679 F.2d at 1354).

WHEREFORE, the parties respectfully request that the proposed settlement in the gross amount of $50,000.00, paid in the following amounts and reflecting costs of $5,712 and attorney fees of $16,666.65 be approved and that the matter be dismissed with prejudice:

| Plaintiff's Name | Days Worked during Class Period | Percentage of Gross Settlement Amount | Attorney's Fees | Costs | Individual Gross Settlement Amount (Pre-Tax Net Proceeds) |
|---|---|---|---|---|---|
| Faulkner | 204 | .220593 | $4,734.79 | $1,428.00 | $8,041.59 |
| Heim | 186 | .185025 | $3,038.03 | $1,428.00 | $4,648.07 |
| Rosendahl | 132 | .10092 | $1,981.62 | $1,428.00 | $2,535.24 |
| Castille | 448 | .493463 | $6,912.22 | $1,428.00 | $12,396.44 |

48753423.1

Respectfully submitted this 31st day of July 2018.


*s/David W. Hodges*

David W. Hodges
Don J. Foty
KENNEDY HODGES, LLP
4409 Montrose Blvd., Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dhodges@kennedyhodges.com
dfoty@kennedyhodges.com

*Attorneys for Plaintiffs*

*s/Brooke A. Colaizzi*

Brooke A. Colaizzi
Beth Ann Lennon
SHERMAN & HOWARD LLC
633 17th Street, Suite 3000
Denver, CO 80202
Phone: (303) 297-2900
Fax: (303) 299-0940
bcolaizzi@shermanhoward.com
blennon@shermanhoward.com

*Attorneys for Defendant*

48753423.1