IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-03137-PAB-KLM

RICKIE FAULKNER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ENSIGN UNITED STATES DRILLING INC.,

    Defendant.

## ORDER

This matter comes before the Court on the parties' Stipulated Motion to Approve Settlement [Docket No. 79]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

Defendant is an oilfield services company located in Denver, Colorado that has operations in North Dakota. Docket No. 14 at 2, 5, ¶¶ 3, 12. Plaintiff has worked for defendant as a rig manager in North Dakota. *Id*. at 6, ¶ 20. Plaintiff claims that rig managers typically worked more than 40 hours each week. Docket No. 1 at 5, ¶ 31. As compensation, plaintiff claims that he and other rig managers were paid a day rate regardless of the number of hours they worked. Docket No. 1 at 3, ¶ 11.[1] Plaintiff alleges that defendant knowingly or recklessly classified him and other rig managers as exempt employees, and therefore not eligible for overtime pay, in order to avoid

---

[1] Defendant admits that rig managers were paid a day rate, but states that the day rate was in addition to a salary paid each pay period. Docket No. 33-4 at 5-6, ¶ 8.

compensating them for all hours worked. Docket No. 1 at 6, ¶¶ 37, 39. Plaintiff claims that, had rig managers been appropriately classified, they would have been entitled to overtime premium pay. *Id.* at 6, ¶ 39.

On December 20, 2016, plaintiff filed this case against defendant, bringing a claim for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a claim for violation of North Dakota Administrative Code § 46-02-07. Docket No. 1. Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b). *Id.* at 1-2, ¶ 2. Plaintiff alleges that he and defendant's other rig managers are similarly situated because they performed the same or similar work and were subject to the same compensation scheme. *Id.* at 8-9, ¶¶ 51, 63.

On January 15, 2018, the parties jointly moved for and stipulated to conditional certification of a collective action. Docket No. 46. The Court granted the motion on February 9, 2018, conditionally certifying a class of

> [a]ll current and former rig managers of Ensign United States Drilling Inc. classified as exempt from overtime under the Fair Labor Standards Act ("FLSA") for at least one week during the two-year period prior to the date the Court authorizes notice to the present.

Docket No. 52 at 6-7, ¶ 1. The Court further approved plaintiff's proposed Notice of Collective Action. *Id.*, ¶ 2.

Following receipt of the court-authorized notice, three individuals joined the collective action as opt-in plaintiffs, bringing the total number of members of the putative collective action to four. Docket No. 79 at 4. The parties advised Magistrate Judge Kristen L. Mix that they had reached a settlement on July 16, 2018. Docket No. 78. On July 31, 2018, the parties jointly moved for a court order approving the

compensating them for all hours worked. Docket No. 1 at 6, ¶¶ 37, 39. Plaintiff claims that, had rig managers been appropriately classified, they would have been entitled to overtime premium pay. *Id.* at 6, ¶ 39.

On December 20, 2016, plaintiff filed this case against defendant, bringing a claim for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a claim for violation of North Dakota Administrative Code § 46-02-07. Docket No. 1. Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b). *Id.* at 1-2, ¶ 2. Plaintiff alleges that he and defendant's other rig managers are similarly situated because they performed the same or similar work and were subject to the same compensation scheme. *Id.* at 8-9, ¶¶ 51, 63.

On January 15, 2018, the parties jointly moved for and stipulated to conditional certification of a collective action. Docket No. 46. The Court granted the motion on February 9, 2018, conditionally certifying a class of

> [a]ll current and former rig managers of Ensign United States Drilling Inc. classified as exempt from overtime under the Fair Labor Standards Act ("FLSA") for at least one week during the two-year period prior to the date the Court authorizes notice to the present.

Docket No. 52 at 6-7, ¶ 1. The Court further approved plaintiff's proposed Notice of Collective Action. *Id.*, ¶ 2.

Following receipt of the court-authorized notice, three individuals joined the collective action as opt-in plaintiffs, bringing the total number of members of the putative collective action to four. Docket No. 79 at 4. The parties advised Magistrate Judge Kristen L. Mix that they had reached a settlement on July 16, 2018. Docket No. 78. On July 31, 2018, the parties jointly moved for a court order approving the

settlement agreement and dismissing the matter with prejudice.  Docket No. 79.

**II. ANALYSIS**

In a lawsuit brought by employees against their employer to recover back wages under the FLSA, any proposed settlement between the parties must be presented to the court for a determination of whether the settlement is fair and reasonable.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  This requirement effectuates the "prime purpose" of the FLSA, which is to "aid the unprotected, unorganized and lowest paid of the nation's working population . . . who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945).

**A.  Final Class Certification**

The FLSA permits an employee or employees to bring an action "[on] behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Courts apply a two-stage approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification.  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).  First, a court makes an initial determination as to whether plaintiffs are similarly situated for purposes of sending notice to putative class members.  *Id.* at 1102.  At the "notice" stage, a court applies a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).  After discovery, a court makes a second determination about whether putative class

members are similarly situated. *See id.* at 1102-03. In deciding whether to certify a collective action at this stage, courts apply a stricter standard and consider several factors, including: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103 (quoting *Vaszlavik*, 175 F.R.D. at 678). Final class certification is generally required before a court may approve a collective action settlement. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013) (quoting *Peterson v. Mortg. Sources, Corp.*, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011)).

Plaintiff contends that the requirements for final collective action certification are satisfied because (1) opt-in plaintiffs all worked as rig managers for defendant, performing the same job duties and performing the same training; (2) defendant's defenses apply equally to all plaintiffs; and (3) proceeding as a collective action provides a fair and procedurally efficient resolution of plaintiffs' claims. Docket No. 79 at 3. The Court agrees that opt-in plaintiffs are similarly situated for purposes of final certification. In his complaint, plaintiff alleged that he and other members of the putative class have similar relevant job duties and pay structure. Docket No. 1 at 8, ¶ 53. These allegations are supported by the common job description offered by the parties, which applies to all rig managers. Docket No. 79 at 3, Docket No. 79-1. Further, Mr. Faulkner and opt-in plaintiff Brent Heim have filed declarations that indicate that their job duties are substantially similar. Docket Nos. 53-2, 53-3. Both plaintiffs

4

state that their primary job duties were performing manual labor at oil well sites for Ensign. *See* Docket No. 53-2 at 1-2, ¶¶ 4, 6; Docket No. 53-3 at 1-2, ¶¶ 4, 6. They also describe similar work schedules, regularly working 15 to 18 hours a day and over 40 hours in a work week being paid a low salary and a day rate. *See* Docket No. 53-2 at 2, ¶ 12; Docket No. 53-3 at 2, ¶ 11. Given the similar job responsibilities and pay structure of plaintiffs, defendant's principal defense – that plaintiffs were exempt from overtime pay under the FLSA – applies equally to all members of the putative collective. *See* Docket No. 79 at 4-5. Finally, fairness and procedural considerations support final certification. Collective actions allow plaintiffs to pool their resources to litigate claims they might otherwise be unable to pursue. Moreover, the parties' settlement in this case will only affect the rights of those individuals who have affirmatively opted in to the lawsuit. *See Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171-72 (D. Colo. 2018) (citing plaintiffs' ability to pool their resources and the limited effect of the settlement as fairness and procedural considerations supporting final certification).

For the foregoing reasons, the Court will grant final collective action certification.

**B.  Notice**

Although § 216(b) does not require that a court hold a fairness hearing before approving a collective action settlement, courts generally require, at a minimum, that opt-in plaintiffs be given notice of any settlement and an opportunity to object. *Tommey v. Comput. Scis. Corp.*, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015); *see also Goldsby v. Renosol Seating, LLC*, 2013 WL 6535253, *10 (S.D. Ala. Dec. 13, 2013) ("[T]he majority of the courts approve a[n FLSA collective action] settlement only after

5

notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the Court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object."). Although the parties' motion states that the three opt-in members of the collective action were "extensively counseled," the parties provide no evidence that the opt-in members were given notice of an opportunity to object. See Docket No. 79 at 7. Notably, the settlement agreement provided to the Court is only signed by Faulkner. See Docket No. 79-2 at 9. The Court finds that, without evidence that the parties have provided opt-in plaintiffs with notice of the settlement and an opportunity to object, it must deny the motion. See Gassel v. Am. Pizza Partners, L.P., No. 14-cv-00291-PAB-NYW, 2015 WL 5244917, at *3 (D. Colo. Sept. 8, 2015).[2]

---

[2] The consent forms signed by the opt-in plaintiffs "designate[d] the named Plaintiff to make decisions on [their] behalf concerning the litigation, including negotiating a resolution of [their] claims, and understand [they] will be bound b[y] such decisions." Docket No. 46-1. However, in cases involving similar consent forms, courts have continued to require that parties provide opt-in plaintiffs with notice of the settlement and an opportunity to object prior to final court approval of the settlement agreement. See, e.g., Sardina v. Twin Arches P'ship, Ltd., No. 15-cv-00054-REB-KLM, 2017 WL 3503367, at *2-3 (D. Colo. July 20, 2017) (requiring that opt-in plaintiffs be provided with notice of settlement and opportunity to object, despite fact that consent form authorized named plaintiffs to act on behalf of class members in all matters pertaining to the lawsuit); Sardina, No. 15-cv-00054-REB-KLM, Docket No. 157-1 (opt-in consent form authorizing "the above Plaintiffs and their law firm . . . to make decisions on [class members'] behalf concerning the litigation, the manner and method of conducting this litigation, attorney's fees and costs, and all other matters pertaining to this lawsuit"). But see Ruiz v. Act Fast Delivery of Colo., No. 14-cv-00870-MSK-NYW, Docket No. 132, at 11 n.5 (D. Colo. Jan. 9, 2017) (suggesting, in dicta, that opt-in consent form "authoriz[ing] the named plaintiffs" to make decisions on behalf of class would obviate need to provide opt-in plaintiffs with notice of settlement and opportunity to object).

### C. Settlement

Before approving an FLSA settlement, a court must find that: (1) the agreement is the result of a bona fide dispute; (2) the proposed settlement is fair and reasonable to all parties involved; and (3) the proposed settlement contains a reasonable award of attorneys' fees and costs. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Gassel*, 2015 WL 5244917, at *3.

#### *1. Bona Fide Dispute*

Parties seeking approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). To meet this obligation, the parties must describe: (1) the nature of the dispute; (2) the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justifications for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* The mere existence of an adversarial lawsuit does not satisfy these requirements. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719-20 (E.D. La. 2008).

Defendant operates oil fields across the United States; plaintiff and members of the collective are "rig managers" who perform physical labor at oil well sites for defendant. Docket No. 1 at 4, ¶¶ 19-21. Plaintiff alleges that defendant failed to pay him and members of the collective for all regular and overtime hours worked by not paying overtime pay when plaintiff and members of the collective worked more than

7

forty hours in a week. *Id*. at 5, ¶¶ 29-31. Defendant denies these allegations and asserts various defenses, including the arguments that plaintiff and members of the collective were exempt and therefore not entitled to overtime, that defendant did not act in bad faith, and that its actions are protected by the FLSA's safe harbor provisions. Docket No. 79 at 4-6. The Court finds that a bona fide dispute exists.

### *2. Fair and Reasonable*

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA's policy rationales. *Dees*, 706 F. Supp. 2d at 1241. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement. *See, e.g.*, *Dail v. George A. Arab Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (evaluating fairness of settlement in individual action); *Collins*, 568 F. Supp. 2d at 721-22 (evaluating settlement in collective action). The Tenth Circuit considers the following factors when deciding whether to approve a class action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The Court finds that these factors support approval of the proposed settlement. The parties did not reach a settlement in this matter until after they had engaged in

meaningful discovery, *see* Docket No. 79 at 4, and engaged in motions practice in this Court. *See* Docket No 47 (defendant's motion for summary judgment). Under the terms of the settlement agreement, defendant agrees to pay $50,000, which consists of (1) $25,121.34 in individual settlement payments; (2) a $2,500 service payment for Mr. Faulkner; and (3) a $22,378.65 fee and expense award to class counsel. Docket No. 79 at 8; Docket No. 79-2 at 5-6. The parties represent that the parties' settlement takes into account the time worked and compensation paid to each plaintiff. Docket No. 79 at 7. Plaintiff contends that the settlement constitutes a fair compromise of the claims in this case, given the risks of protracted litigation, the uncertainty surrounding the nature and amount of recoverable damages, and defendant's defenses to liability. *Id.* at 6-7. The parties state that the proposal is a "fair and equitable resolution to all parties." *Id*. at 8. Based on this information, and upon consideration of the relevant factors, the Court finds the parties' proposed settlement to be fair and reasonable.

The settlement also provides for a $2,500 service payment to the named plaintiff, Mr. Faulkner, which represents five percent of the total settlement amount. The factors to consider in determining an incentive award include: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Aug. 22, 2015). The parties' motion provides no argument or evidence that would allow the Court to evaluate these factors and determine whether the award is reasonable. *See, e.g., Ostrander v.*

9

*Customer Eng'g Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2019 WL 764570, at *4 (D. Colo. Feb. 21, 2019) (approving a $7,500 service payment where evidence showed that plaintiff had "been involved at all stages of the litigation, responding to discovery, participating in an all-day deposition, and appearing for . . . mediation"); *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 proposed service award reasonable where the named plaintiff assisted counsel in reviewing documents produced by defendants and participated in settlement conference); *Shaw*, 2015 WL 1867861, at *9 (approving $10,000 incentive awards to each of the five named plaintiffs based on their actions in litigating the case). Accordingly, the Court does not have sufficient evidence to approve the requested service payment for Mr. Faulkner.

The Court must next determine whether the settlement agreement is consistent with the purpose of the FLSA. To determine whether a settlement complies with the FLSA, courts consider: (1) the presence of other similarly situated employees; (2) the likelihood that plaintiffs' circumstances will recur; and (3) whether defendants have a history of non-compliance with the FLSA. *Dees*, 706 F. Supp. 2d at 1244. Also relevant is whether the proposed settlement contains a confidentiality provision. "It is well-settled that . . . a confidentiality provision in an FLSA settlement agreement 'contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights.'" *Hoffman v. Poulsen Pizza LLC, et al.*, 2016 WL 2848919, at *3 (D. Kan. May 16, 2016) (quoting *Barbosa v. Nat'l Beef Packing Co., LLC*, 2014 WL 5099423, at *8 (D. Kan. Oct. 10, 2014); *see also*

*Gamble v. Air Serv. Corp.*, 247 F. Supp. 3d 1302, 1306 (N.D. Ga. 2017) (noting that confidentiality provisions in FLSA settlements not only "frustrate the spirit and intent of the statute," but also "arguably violate provisions of the FLSA itself"). As there is no evidence in the record that defendant's non-compliance with the FLSA constitutes a continuing violation, and the settlement agreement does not contain a confidentiality provision, the parties' settlement does not undermine the purposes of the FLSA.

### 3. Attorney's Fees and Costs

The Court must consider whether counsel's requested award of $16,666.65 plus expenses of $5,712 is reasonable. *See* 29 U.S.C. § 216(b) (providing that a court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (unpublished) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). In common fund cases, courts in this circuit may calculate a reasonable attorney's fee using either the percentage of the fund method or the lodestar method. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). A fee calculated under either method, however, must be adjusted in accordance with the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by [the] client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12)

awards in similar cases.

*Whittington*, 2013 WL 6022972, at *5 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483 (stating that *Johnson* factors must be considered regardless of whether court uses lodestar method or percentage of fund method to calculate attorney's fee).

At present, the Court lacks sufficient information to determine whether the fees and costs requested by plaintiff's counsel are reasonable. Plaintiff's counsel seeks approval of a $22,378.65 fee award consisting of $16,666.65 in attorney's fees and $5,712 in costs. *See* Docket No. 79 at 7-8. Counsel alleges, without any supporting documentation, that the lodestar in this case is more than $75,000. *Id*. at 8. The evidence presented is insufficient to support the requested fee award. The joint motion lacks any detailed description of how plaintiff calculated the lodestar amount, such as the number of hours billed on the case, the types of services rendered during those hours, a contemporaneous record of how those hours were allotted to specific tasks, or any evidence of what a reasonable hourly rate would be for plaintiff's attorneys. *See* D.C.COLO.LCivR 54.3(b)(2) (requiring motion for attorney fees to be supported by "a detailed description of the services rendered"). The percentage of the fund approach also does not support plaintiff's fee request. Plaintiff's counsel requests an award equal to 44.75% of the common fund. Docket No. 79 at 7-8.[3] While fee awards in common

---

[3] Although plaintiff's counsel represents that the request is only for thirty-three percent of the gross settlement, a request for expenses is included in the calculation of a percentage of the fund approach. *See, e.g., Davis*, 292 F. Supp. 3d at 1174 (evaluating an award for "attorneys' fees and expenses" under the percentage-of-the-fund approach).

fund cases "have ranged from four percent to 58 per cent of the common fund," *Barbosa*, 2015 WL 4920292, at *11, an award equaling thirty-three percent of the gross settlement amount represents a customary, and presumptively reasonable, fee in this circuit. *See Davis*, 292 F. Supp. 3d at 1174 (finding award equal to thirty-seven percent of gross settlement amount to be "well within the normal range for a contingent fee award"); *Koehler v. Freightquote.com, Inc.*, 2016 WL 3743098, at *7 (D. Kan. July 13, 2016) (approving fee award amounting to thirty-three percent of the common fund); *Barbosa,* 2015 WL 4920292, at *11 (finding that fee award, which equaled thirty-three percent of the total settlement amount, was "within the customary percentage of the fund approved" by the court); *cf. Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."). The requested award is over one-third more than the presumptively reasonable fee, and plaintiff's counsel provides no evidence that would support the requested award in light of the *Johnson* factors. In particular, counsel has not shown that this case involved particularly novel or difficult legal issues, or that the time and labor required justifies a higher award.

The parties also fail to address how the attorney's fees were negotiated in relation to the class members' settlement. Any future motion should therefore address this issue. *See Gassel*, 2015 WL 5244917, at *5; *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 WL 1883537, at *1 n.2 (M.D. Fla. Apr. 24, 2015) (noting that parties' first motion for settlement approval was denied without prejudice for failure "to state that

attorney's fees were negotiated separately").

### III. CONCLUSION

The above-cited deficiencies preclude approval of the parties' settlement agreement at this time. For the foregoing reasons, it is

**ORDERED** that the parties' Stipulated Motion to Approve Settlement [Docket No. 79] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that the parties' joint request for final collective action certification for a collective of

> [a]ll current and former rig managers of Ensign United States Drilling Inc. classified as exempt from overtime under the Fair Labor Standards Act ("FLSA") for at least one week during the two-year period prior to the date the Court authorizes notice to the present.

is **GRANTED**. It is further

**ORDERED** that the remainder of the parties' motion is **DENIED WITHOUT PREJUDICE**.

DATED March 12, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge