IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-03137-PAB-KLM

RICKIE FAULKNER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ENSIGN UNITED STATES DRILLING INC.,

    Defendant.

# ORDER

This matter comes before the Court on Plaintiffs' Renewed Application for Attorney's Fees, Costs, and Expenses [Docket No. 86]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

Defendant is an oilfield services company located in Denver, Colorado that has operations in North Dakota. Docket No. 14 at 2, 5, ¶¶ 3, 12. Named plaintiff Rickie Faulkner ("Mr. Faulkner") has worked for defendant as a rig manager in North Dakota. *Id*. at 6, ¶ 20. Mr. Faulkner claims that rig managers typically worked more than 40 hours each week. Docket No. 1 at 5, ¶ 31. As compensation, Mr. Faulkner claims that he and other rig managers were paid a day rate regardless of the number of hours they worked. Docket No. 1 at 3, ¶ 11.[1] Mr. Faulkner alleges that defendant knowingly or

---

[1] Defendant admits that rig managers were paid a day rate, but states that the day rate was in addition to a salary paid each pay period. Docket No. 33-4 at 5-6, ¶ 8.

recklessly classified him and other rig managers as exempt employees, and therefore not eligible for overtime pay, in order to avoid compensating them for all hours worked. Docket No. 1 at 6, ¶¶ 37, 39. Mr. Faulkner claims that, had rig managers been appropriately classified, they would have been entitled to overtime premium pay. *Id.* at 6, ¶ 39.

On December 20, 2016, Mr. Faulkner filed this case against defendant, bringing a claim for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a claim for violation of North Dakota Administrative Code § 46-02-07. Docket No. 1. Mr. Faulkner brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b). *Id.* at 1-2, ¶ 2. Mr. Faulkner alleges that he and defendant's other rig managers are similarly situated because they performed the same or similar work and were subject to the same compensation scheme. *Id.* at 8-9, ¶¶ 51, 63. Three individuals subsequently joined the collective action as opt-in plaintiffs, bringing the total number of members of the putative collective action to four. Docket No. 79 at 4.

The parties advised Magistrate Judge Kristen L. Mix that they had reached a settlement on July 16, 2018. Docket No. 78. On July 31, 2018, the parties jointly moved for a court order approving the settlement agreement and dismissing the matter with prejudice (the "first motion"). Docket No. 79. On March 12, 2019, the Court granted in part and denied in part the first motion. Docket No. 81. The Court granted final collective action certification for a collective of

> [a]ll current and former rig managers of Ensign United States Drilling Inc. classified as exempt from overtime under the Fair Labor Standards Act ("FLSA") for at least one week during the two-year period prior to the date the Court authorizes notice to the present.

*Id*. at 14. However, the Court held that, because the first motion did not include any "evidence that the opt-in members were given notice of an opportunity to object," the Court could not approve the settlement agreement. *Id*. at 6. The Court also determined that (1) the settlement agreement is the result of a bona fide dispute, (2) the settlement agreement is fair and reasonable, and (3) the settlement agreement does not undermine the purposes of the FLSA. *Id*. at 6-11. Finally, the Court concluded that the parties had not provided sufficient evidence to approve (1) the requested $2,500 service payment for the named plaintiff, Mr. Faulkner, and (2) the requested attorney's fee award of $16,666.65 plus expenses of $5,712. *Id*. at 9-14.

On June 24, 2019, plaintiffs filed the instant notion, requesting that the Court approve the proposed service payment and fee award. Docket No. 86. Although the instant motion does not explicitly request that the Court approve the settlement agreement, the Court construes the motion as implicitly requesting approval of the settlement agreement. On January 31, 2020, plaintiffs filed evidence that the parties have provided the opt-in plaintiffs with notice of the settlement and an opportunity to object. Docket No. 89.

## II. ANALYSIS

In a lawsuit brought by employees against their employer to recover back wages under the FLSA, any proposed settlement between the parties must be presented to the court for a determination of whether the settlement is fair and reasonable. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). This requirement effectuates the "prime purpose" of the FLSA, which is to "aid the

3

unprotected, unorganized and lowest paid of the nation's working population . . . who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945).

The Court has already granted final collective action certification. *See* Docket No. 81 at 3-5.

### A. Notice

Although § 216(b) does not require that a court hold a fairness hearing before approving a collective action settlement, courts generally require, at a minimum, that opt-in plaintiffs be given notice of any settlement and an opportunity to object. *Tommey v. Comput. Scis. Corp.*, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015); *see also Goldsby v. Renosol Seating, LLC*, 2013 WL 6535253, *10 (S.D. Ala. Dec. 13, 2013) ("[T]he majority of the courts approve a[n FLSA collective action] settlement only after notice has been provided to the opt-in plaintiffs and a fairness hearing conducted, or at the least, what is required is a statement to the Court that the opt-in plaintiffs have had notice of the settlement and an opportunity to object."). The parties have submitted a status report indicating that a notice of settlement was sent to the four opt-in plaintiffs on September 5, 2019. Docket No. 89. The notice of settlement was approved by the Court, Docket No. 87, and includes information about the amount of the settlement and the process by which the opt-in plaintiffs may file a written objection. The Court has not received any objections to the settlement agreement, and the deadline to file such objections expired on October 6, 2019. *See* Docket No. 89-1 at 2-3. Thus, the Court finds that the parties have been given notice of the settlement and an opportunity to

object.

### B. Settlement

Before approving an FLSA settlement, a court must find that: (1) the agreement is the result of a bona fide dispute; (2) the proposed settlement is fair and reasonable to all parties involved; and (3) the proposed settlement contains a reasonable award of attorney's fees and costs. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Gassel*, 2015 WL 5244917, at *3. The Court has already determined that the proposed settlement is the result of a bona fide dispute and is fair and reasonable to all parties involved. *See* Docket No. 81 at 6-11. Thus, the only issues remaining for the Court are whether the service payment to Mr. Faulkner and the proposed award of attorney's fees and costs are appropriate.

#### *1. Service Award*

The settlement provides for a $2,500 service payment to the named plaintiff, Mr. Faulkner, which represents five percent of the total settlement amount. Docket No. 79-2 at 3, ¶ 9.k. The factors to consider in determining an incentive award include: (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Aug. 22, 2015).

In the instant motion, plaintiffs argue that the service award is reasonable. Plaintiffs state that Mr. Faulkner participated extensively in the litigation by attaching his

5

name to the case in the first place, providing declarations and information to plaintiffs' counsel, and traveling to and participating in a deposition. Docket No. 86 at 7-8. Plaintiffs further state that they were able to obtain conditional certification as a collective as a result of Mr. Faulkner's participation, which "facilitat[ed] the participation of" the opt-in plaintiffs. *Id*. at 8. Finally, plaintiffs state that Mr. Faulkner spent more than fifteen hours participating in the case, which is "significantly greater than the amount of time spent by the opt-in [p]laintiffs." *Id*. at 8-9. Based on this information, the Court finds that a service payment of $2,500 for Mr. Faulkner is reasonable and commensurate with incentive fees awarded in other cases in this district. *See, e.g., Ostrander v. Customer Eng'g Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2019 WL 764570, at *4 (D. Colo. Feb. 21, 2019) (approving a $7,500 service payment where evidence showed that plaintiff had "been involved at all stages of the litigation, responding to discovery, participating in an all-day deposition, and appearing for . . . mediation"); *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 proposed service award reasonable where the named plaintiff assisted counsel in reviewing documents produced by defendants and participated in settlement conference); *Shaw*, 2015 WL 1867861, at *9 (approving $10,000 incentive awards to each of the five named plaintiffs based on their actions in litigating the case).

### 2. Attorney's Fees and Costs

The Court must consider whether counsel's requested award of $16,666.65 plus expenses of $5,712 – a total fee award of $22,378.65 – is reasonable. *See* 29 U.S.C.

§ 216(b) (providing that a court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (unpublished) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). In common fund cases, courts in this circuit may calculate a reasonable attorney's fee using either the percentage of the fund method or the lodestar method. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). A fee calculated under either method, however, must be adjusted in accordance with the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by [the] client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Whittington*, 2013 WL 6022972, at *5 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483 (stating that *Johnson* factors must be considered regardless of whether court uses lodestar method or percentage of fund method to calculate attorney's fee). In evaluating the reasonableness of a fee award, a court need specifically address only relevant *Johnson* factors. *Gudenkauf v. Staffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

As an initial matter, plaintiffs' counsel represents that attorney's fees in this case were allocated only after the parties agreed to a gross settlement amount, pursuant to

7

the contingency fee arrangement between the named plaintiff and plaintiffs' counsel. Docket No. 86 at 6. Thus, the Court is satisfied that the requested attorney's fee award was negotiated separately from the settlement agreement. *See* Docket No. 81 at 13-14 (ordering the parties to "address how the attorney's fees were negotiated in relation to the class members' settlement").

Turning to the *Johnson* factors, the Court finds that the factors relevant in this case weigh in favor of approving the requested fee award.[2]

### a. Time and Labor Required

Class counsel represent that they have spent more than 230 hours litigating this case since it was filed in 2016. *See* Docket No. 86-1 at 3, ¶ 7. As part of the litigation, counsel conducted discovery, engaged in motion practice on both a motion for conditional certification and a motion for summary judgment, negotiated a settlement, and worked with defendant's counsel to ensure approval of the settlement. *See id*. at 3-4, ¶¶ 11-12. Given the substantial amount of time and labor invested in this case by class counsel, the Court finds that the time and labor factor weighs in favor of plaintiffs' requested fee award.

### b. Novelty and Difficulty of the Questions Presented

Class counsel represents that the case "presented moderately difficult questions" as to whether plaintiffs were exempt from overtime pay within the meaning of the FLSA. *See* Docket No. 86-1 at 6-7, ¶ 18. This factor therefore weighs in favor of the

---

[2] The seventh *Johnson* factor is not relevant in this case. *See Brown*, 838 F.2d at 455-56 ("[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation.").

requested award.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) (noting that, although the area of law was not novel, the difficulty and complexity of the issues in the case supported a "generous award of attorney fees").

### c.  Skill Required and Experience of Plaintiffs' Counsel

The Court will consider the third and ninth *Johnson* factors together.  *See, e.g.*, *id.* (noting that the second, third, and ninth *Johnson* factors are closely related).  As evidenced by his declaration, class counsel has extensive experience representing plaintiffs in both wage and hour cases and in class action lawsuits.  *See* Docket No. 86-1 at 7, ¶¶ 19-21, and at 21 (noting that class counsel "has worked on many FLSA cases from investigation to case resolution).  Accordingly, class counsel was well equipped to address the unique challenges that defendant's financial condition and anticipated defenses posed to plaintiffs' ability to recover in this case.  Class counsel successfully negotiated a structured settlement that provides meaningful recovery for the plaintiff class.  The "skill" and "experience" factors therefore weigh in favor of the requested fee award.

### d.  Preclusion of Other Employment

"Attorneys attempting to handle a large class [in FLSA cases] are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case."  *Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013).  Class counsel represents that he spent significant hours on this case

on a contingent fee basis. *See* Docket No. 86-1 at 3, ¶ 7. The Court finds that, while this case does not involve a large class, the handling of this case precluded other work, and therefore the fourth factor weighs in favor of the requested fee award.

### e. The Customary Fee/Awards in Similar Cases

The Court considers factors five and twelve together. Courts in this district have recognized that "[t]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009); see also *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable"); *Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007) (collecting cases approving percentage fees ranging from 24% to 36% of the common fund). Plaintiffs in this case seek $16,666.65 plus expenses of $5,712 for a total fee award of $22,378.65, or 44.75% of the common fund in this case.[3] The Court finds this amount to be in line with the customary fees and awards in similar cases. The fifth and twelfth *Johnson* factors therefore weigh in favor of approval.

### f. Fixed or Contingent Nature of the Fee

---

[3] Plaintiffs' counsel argues that the Court should evaluate the request for costs separately, and should thus only consider the request for $16,666.65 as the "percentage of the fund" amount in this case. Docket No. 86 at 5-6. The Court is not persuaded that it is required to follow the approach advocated by plaintiffs' counsel. *See, e.g.*, *Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *4 (D. Colo. Dec. 18, 2018) (evaluating a request for attorney's fees and costs together); *Ostrander v. Customer Eng'g Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2019 WL 764570, at *5 (D. Colo. Feb. 21, 2019) (same). However, because the Court approves plaintiffs' counsel's request for attorney's fees and costs taken together, the Court need not evaluate plaintiffs' argument in detail.

Class counsel undertook the representation on a contingency basis, contracting with the named plaintiff for a fee of 40% of any recovery after recovery of expenses. Docket No. 86-1 at 3, ¶ 6. Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).[4]

### g. Amount Involved and the Results Obtained

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). Here, class counsel recovered a net recovery for the four plaintiffs ranging from $2,535.24 to $12,396.44. *See* Docket No. 79-2 at 6, ¶ 14. Further, all affected class members will receive compensation. *See id*. Class counsel

---

[4] While courts have consistently interpreted this factor as an inquiry into the fixed or contingent nature of the fee arrangement, the Supreme Court has indicated that "a careful reading of *Johnson* shows that the contingency factor was meant to focus judicial scrutiny solely on the existence of any contract for attorney's fees which may have been executed between the party and [the] attorney." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (plurality op.), *abrogated in part on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). However, even if this factor is interpreted as focusing on the specific fee quoted to plaintiffs at the outset of the litigation, the Court finds that the apparent absence of any prearranged fee weighs in favor of the requested award. *See id.* ("The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." (internal quotation marks omitted)); *Johnson*, 488 F.2d at 718 (indicating that fee amount agreed upon at outset of litigation is a factor to be considered in determining reasonableness of requested fee); *Brody*, 167 P.3d at 200-01 (finding that *Johnson* factors weighed in favor of fee award where "there was no prearranged fee other than an understanding the fee would be contingent on the outcome").

represents that the recovery "represents a significant portion of the alleged unpaid wages" in light of the risk that defendant might have "prevailed on issues of liability or damages" if the case had proceeded to trial. See Docket No. 86-1 at 8, ¶ 23. Given the risks involved, the Court finds that the relief provided by the settlement represents an excellent result for the settlement class. See Brown, 838 F.2d at 456 (finding that the results obtained by the settlement "may be given greater weight [in the Johnson analysis] when . . . the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class"); Tennille v. W. Union Co., No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement). Accordingly, the eighth Johnson factor strongly supports the requested fee award.

### h. The Undesirability of the Case

Class counsel states that the time and effort required to litigate this case "would make it undesirable to many attorneys" given that the case was litigated on a contingency fee basis. See Docket No. 86-1 at 6, ¶ 17. The relative undesirability of this case therefore weighs in favor of the requested fee award. See In re Qwest, 625 F. Supp. 2d at 1152-53 (finding that risk borne by lead counsel was key factor in assessing desirability of the case).

### i. Nature of Professional Relationship with the Client

"[A] lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." In re Qwest, 625 F. Supp. 2d at 1153. The

Court finds that unpaid wage claims generally do not lend themselves to continuous, long-term attorney-client relationships. *See Aragon v. Clear Water Prods. LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *7 (D. Colo. Dec. 18, 2018). As there is "no indication that . . . counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs," the Court finds that this factor does not apply in this case. *See In re Qwest*, 625 F. Supp. 2d at 1153.

### j. Lodestar Crosscheck

Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *see also Brody*, 167 P.3d at 201 (noting that, "[t]ypically, courts use the percentage method and then crosscheck the adequacy of the resulting fee by applying the lodestar method"). Class counsel seeks $22,378.65 in attorney's fees and costs for approximately 230 hours spent on the litigation. The requested fee reflects a 0.27 multiplier on counsel's $80.270.75 lodestar amount. *See* Docket No. 86-1 at 3-4, ¶ 11.[5]

The Court finds the number of hours expended on this case to be reasonable given that the litigation has been ongoing since 2016 and has involved multiple motions, extensive discovery, and settlement negotiations.[6] The hourly rate charged by class counsel, ranging from $150 to $600 per hour, *see* Docket No. 86-1 at 4, ¶ 11, is also

---

[5] Using the requested attorney's fee alone – $16,666.65 – rather than the requested award of attorney's fees and costs, the multiplier is 0.21.

[6] Although class counsel has not submitted detailed billing records, the Colorado Court of Appeals has stated that, when "the lodestar method is used as a mere crosscheck of the percentage method, the court does not need to scrutinize exhaustively the hours documented by counsel." *Brody*, 167 P.3d at 204.

13

generally consistent with the rates charged in other cases in this district. *See Shaw*, 2015 WL 1867861, at *8 (approving of hourly rates ranging from $150 to $675 per hour for attorneys and staff members involved in litigation). Even if the rate is slightly higher than the rates customarily charged in this area, the 0.27 multiplier is significantly lower than the lodestar multipliers that have been approved in other class action cases in this District. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8 (finding lodestar multiplier of 1.37 to be "significantly lower than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases"); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6). Accordingly, the lodestar crosscheck supports the reasonableness of the requested fee.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Renewed Application for Attorney's Fees, Costs, and Expenses [Docket No. 86] is **GRANTED**. It is further

**ORDERED** that plaintiff's counsel is entitled to an award of $22,378.65 in attorney's fees and costs. It is further

**ORDERED** that the parties' Settlement Agreement and Release [Docket No. 79-2] is **APPROVED**. It is further

**ORDERED** that this case is dismissed without prejudice. Within fifteen days of this order, the parties shall notify the Court whether the settlement has been funded

14

pursuant to the terms of the settlement agreement. Once the settlement is funded, the Court will enter an order dismissing the case with prejudice. It is further

ORDERED that the Court retains jurisdiction over this case for the limited purpose of enforcing the parties' settlement agreement until the settlement is funded and the case is dismissed with prejudice.

DATED February 4, 2020.

BY THE COURT:

S/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge